UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARASHI MAHALO, LLC, <br><br> Defendant. | Case No. 18-cv-07311-VC <br><br> **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 26 |

Abante Rooter and Plumbing raises four claims against Arashi Mahalo under the Telephone Consumer Protection Act (TCPA). Two of those claims depend on the use of an "automatic telephone dialing system" (often referred to as an ATDS for short). 47 U.S.C. § 227(b). The other two claims stem from Abante's membership on the National Do-Not-Call Registry. § 227(c). Arashi moves for summary judgment on all four claims.

As everyone now agrees, Arashi did not call Abante; therefore, Arashi did not directly violate the TCPA. The calls to Abante were instead placed by DTX Business Solutions, a third-party lead-generation company retained by Arashi as an independent contractor. Goldman Decl. ¶ 10, Dkt. No. 28. Arashi, which provides financing to small businesses, hired DTX to contact and screen merchants who might be good candidates for Arashi's financing services. *Id.* ¶¶ 10–13. These potential customers are called "leads." Under Ninth Circuit precedent, Arashi is liable for DTX's alleged violations of the TCPA only to the extent that federal common-law principles of agency would impose vicarious liability. *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072–73 (9th Cir. 2019).

Abante doesn't contend that Arashi actually granted DTX the authority to use an ATDS

or to call merchants on the Do-Not-Call Registry. And for good reason: Arashi presented unrebutted evidence that DTX "repeatedly represented that its services were compliant with the TCPA." Goldman Decl. ¶ 14; *see Jones v. Royal Administration Services, Inc.*, 887 F.3d 443, 449 (9th Cir. 2018). Abante presses two other theories of vicarious liability: first, that DTX had apparent authority to take these prohibited actions; and second, that Arashi ratified the violations after the fact. But Abante did not develop the record in any meaningful way to support either theory.

As to the first theory, apparent authority exists when the principal's own actions lead the plaintiff to reasonably believe that the agent has authority to perform certain acts for the principal. *See Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1055 (9th Cir. 2017). The record reflects only one action taken by Arashi with any bearing on this issue. After DTX called Abante's owner, Fred Heidarpour, to broach the possibility of financing a project for his plumbing business, DTX transferred the call to one of Arashi's employees, who further discussed the potential loan with Heidarpour. *See* Heidarpour Decl. ¶¶ 10–11, Dkt. No. 32-1. This conversation certainly could lead one to reasonably conclude (correctly) that DTX possessed the authority to procure leads for Arashi's financing services. But Arashi did nothing to give Abante the (incorrect) impression that Arashi, by purchasing leads, had authorized DTX to use an ATDS or to call merchants on the Do-Not-Call Registry. *See Kristensen v. Credit Payment Services Inc.*, 2015 WL 4477425, at *5 (D. Nev. July 20, 2015).

As to the second theory, a principal ratifies an agent's TCPA violation by accepting the benefit of the agent's acts (i) with knowledge of the material facts (that is, the TCPA violation) or (ii) with knowledge of facts that would have led a reasonable person to investigate whether the agent complied with the TCPA. *See Kristensen v. Credit Payment Services, Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018). Abante introduced no evidence that Arashi, once apprised of DTX's alleged violations of the TCPA, nonetheless accepted the benefits of the agency relationship. *See id.* at 1015. To the contrary, it is undisputed that Arashi canceled its arrangement with DTX after Abante contacted Arashi regarding the alleged TCPA violations. Goldman Decl. ¶ 24; *see*

2

*Henderson*, 918 F.3d at 1076 (contrasting consent to unlawful acts with termination of the third party's services). Nor does the record contain any evidence that Arashi, prior to Abante's communication, remained willfully ignorant of any "red flag" indicating DTX's unlawful methods for this "otherwise commonplace marketing activity." *Kristensen*, 879 F.3d at 1015.[1]

Finally, even if Abante had developed facts demonstrating a viable theory of vicarious liability, its ATDS-based claims would still be subject to summary adjudication. An ATDS is defined as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1); *see Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018). The sum total of the evidence that DTX used an ATDS to dial Abante's number is that Heidarpour, upon answering the phone, heard a "clicking noise" and a "long pause" before DTX's representative introduced himself. Heidarpour Decl. ¶ 9. Extrapolating from this click and pause, Abante contends in its opposition that DTX used a predictive dialer, a common type of ATDS. *See Marks*, 904 F.3d at 1045 (discussing the "proliferating use of the predictive dialer"). But attorney argument is no substitute for record evidence. And this record contains no direct evidence that DTX possessed a predictive dialer or circumstantial evidence that the lead-generation industry typically (or even sometimes) uses predictive dialers. *Cf. Henderson*, 918 F.3d at 1076 (explaining that certain equipment is "ubiquitous in the debt collection industry"). Nor is there, for instance, expert testimony with respect to the telltale signs of predictive dialers. All we know, on this record, is that Heidarpour heard a click and then a pause. That allegation might be enough to state a plausible claim and thereby unlock the doors to discovery. *See Abramson v. Oasis Power LLC*, 2018 WL 4101857, at *7 (W.D. Pa. July 31, 2018); *Toney v. Quality Resources, Inc.*, 75 F. Supp. 3d 727, 732 (N.D. Ill. 2014). But a reasonable jury could

---

[1] Abante's objections to the Goldman Declaration are overruled. *See* Dkt. No. 32-6. The declaration of Arashi's operations manager is undeniably relevant to the issue of vicarious liability. And to the extent that Goldman repeats what DTX told Arashi, those statements are put in evidence for a non-hearsay purpose—to prove the scope of the agency relationship, not to prove the truth of the matter asserted by DTX regarding its compliance with the TCPA.

not return a verdict for Abante on so flimsy a basis. *See Estrella v. Ltd Financial Services, LP*, 2015 WL 6742062, at *3 (M.D. Fla. Nov. 2, 2015).

Summary judgment is granted to Arashi on all four claims.

**IT IS SO ORDERED.**

Dated: December 19, 2019

VINCE CHHABRIA
United States District Judge